2003 UT App 39

**STATE of Utah, Appellee,**

v.

**Edwin PIRELA, Appellant.**

**No. 20010886–CA.**

Court of Appeals of Utah.

Feb. 13, 2003.

R. Paul Kawai and Margaret P. Lindsay, Aldrich Nelson Weight & Esplin, Provo, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before BILLINGS, Associate Presiding Judge, DAVIS, and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

¶1 Defendant Edwin Pirela appeals from convictions of Aggravated Sexual Assault, a first degree felony, in violation of Utah Code Ann. § 76–5–405 (1999), and Aggravated Assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1999). Defendant also appeals the imposition of a sentence enhancement under Utah Code Ann. § 76–3–407 (1999). We affirm.

## BACKGROUND [1]

██ ¶2 Defendant's convictions stem from a March 11, 2000 episode. Around 10:00 p.m., the victim went to Defendant's motel room. According to the victim's trial testimony, she became afraid when Defendant insisted she would have her "clothes off by the end of the night." When the victim tried to leave, Defendant repeatedly hit her in the face and demanded that she take her pants off. The victim screamed and attempted to escape. Because the claw lock had been applied to the room door, it opened just a few inches. The victim screamed through the opening and Defendant began choking her until she struggled to breathe. Defendant threatened that if she made any more sounds "he would put [her] out of [her] misery." Defendant pushed the victim onto the bed, the victim removed her pants, and Defendant penetrated her twice with his penis and once digitally.

¶3 At trial, Defendant presented a different account. According to his testimony, the victim was a prostitute who consented to have sex with him. After they had sex, the victim demanded drugs from him. When Defendant refused to buy the victim drugs, she started screaming and swung at him. He grabbed her by the collar and possibly hit her as he attempted to throw her out of the room. Defendant claimed that the victim

fabricated the assaults because he did not give her drugs.

¶4 At the same time the episode in Defendant's room was occurring, other motel guests heard screaming. One of the guests saw an apparently distressed woman with a fat lip crying and hurrying down the hall. Proceeding up the hall, the guest saw Defendant, who appeared slightly distressed.

¶5 After barricading herself in her motel room, the victim called her boyfriend, who was at work, and told him she had been raped. After pushing through the barricaded door, the boyfriend discovered the victim in a fetal position, beat-up and bloody. When police officers arrived, the victim was huddled in a corner, crying, with visible physical injuries.

¶6 Shortly thereafter, the victim was taken to a hospital where a forensic nurse took physical evidence from her. The nurse noted the victim's injuries were inflicted within the last six to eight hours. Among the injuries were neck and eye bruising consistent with choking. She also had vaginal trauma consistent with forced penetration. Subsequently, the forensic nurse collected physical evidence from Defendant. The evidence collected from the victim and Defendant revealed "seminal fluid only from [Defendant]."

¶7 Defendant was charged with two counts of aggravated sexual assault and one count of aggravated assault. At trial, Defendant sought to introduce three witnesses' testimony indicating that the victim engaged in prostitution for drugs and that she would become upset and make threats when she was not given drugs. Defendant also sought to introduce testimony about an October 2000 incident involving a sex-for-drugs transaction following which the victim allegedly made "accusations" about "individuals" in a motel room. The trial court concluded the proffered testimony was inadmissible.

¶8 After the jury returned a verdict convicting Defendant of one count each of aggravated assault and aggravated sexual assault,

---

1. In general " '[w]e view the facts in the light most favorable to the jury verdict' " and recite them accordingly. *State v. Martin,* 2002 UT 34,- ¶2 n. 1, 44 P.3d 805 (citation omitted) (alteration in original). However, we recite trial testimony to the extent it is necessary "to fully understand the issues raised on appeal." *Id.*

the State introduced certified court documents indicating that an Edwin Pirela, with a birth date of October 25, 1954, had been convicted of a felony sexual offense in Illinois. After receiving the evidence, the jury found beyond a reasonable doubt that Defendant previously had been convicted of a felony sexual offense. At sentencing, the trial court ordered a sentencing enhancement to run consecutively to the sentences on the aggravated sexual assault and aggravated assault convictions.

¶ 9 Prior to sentencing, Defendant filed a motion to arrest judgment, arguing that the evidence was insufficient to support the enhancement. Defendant also filed a motion for new trial, arguing that the trial court erred by excluding the testimony regarding the October 2000 incident. However, unlike the testimony proffered at trial, the testimony trial counsel maintained the witnesses would offer omitted any direct reference to prostitution and indicated the victim allegedly threatened to call the police because "individuals" in a motel room had taken advantage of her sexually.

¶ 10 After sentencing, Defendant filed a renewed motion for a new trial, claiming the witnesses would have testified the victim "had fabricated claims of sexual misconduct on another occasion against" the individuals in the motel room.

¶ 11 The trial court denied Defendant's motions for a new trial and to arrest judgment. Defendant appeals both denials.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 Defendant first argues the trial court erred by excluding evidence that "indicated that the alleged victim had made similar prior false allegations of sexual assault," and by not granting a new trial based on this evidence. "[T]he decision to grant or deny a new trial is a matter of discretion with the trial court and will not be reversed absent a clear abuse of that discretion." *State v. Williams*, 712 P.2d 220, 222 (Utah 1985). "Any legal determinations made by the trial court as a basis for its denial of a new trial motion are reviewed for correct-

ness." *State v. Loose*, 2000 UT 11,¶ 8, 994 P.2d 1237.

¶ 13 Defendant next argues that his trial counsel was ineffective by failing to assert at trial that the testimony regarding the false allegations of sexual assault was admissible under rules 412 and 404(b) of the Utah Rules of Evidence. "When an ineffective assistance of counsel claim 'is raised for the first time on appeal[,] ... it presents a question of law.'" *State v. Holbert*, 2002 UT App 426,¶ 26, 61 P.3d 291 (citation omitted).

¶ 14 Finally, Defendant argues the trial court erred in denying his motion to arrest judgment on the enhancement. We will not reverse the denial of a motion to arrest judgment unless " 'the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable ... that reasonable minds must have entertained a reasonable doubt.' " *State v. Hoffhine*, 2001 UT 4,¶ 20, 20 P.3d 265 (citation omitted).

## ANALYSIS

### I. Testimony Indicating the Victim Threatened to Fabricate Sexual Assaults

¶ 15 Defendant argues the trial court erred by excluding testimony indicating "that the alleged victim had made similar prior false allegations of sexual assault," and by not granting a new trial based on this testimony. Defendant maintains that rule 412 does not bar such testimony and it is admissible under rule 404.

¶ 16 At trial, the court excluded testimony of three witnesses concerning the victim's reputation as a prostitute and her behavior during sex-for-drugs transactions. Rule 412 precludes evidence of a victim's " 'sexual predisposition,' " and evidence that " 'may have a sexual connotation for the fact finder.' " *State v. Martin*, 2002 UT 34,¶¶ 40, 42, 44 P.3d 805 (quoting Utah R. Evid. 412 & advisory committee's note) (emphasis omitted); *see also Williams v. Indiana*, 681 N.E.2d 195, 202 (Ind.1997) (noting a party cannot circumvent the requirements of rule 412(b) by relying on rule 404(b) in concluding

trial court properly excluded evidence of victim's drug history and sexual conduct).

¶ 17 In the present case, the trial proffer [2] was loaded with testimony as to the victim's sexual predisposition, and at trial, counsel did not offer to limit the testimony nor "aver[ ] that he [would] not introduce 'any evidence concerning [the victim's] sexual behavior or predisposition.' " *Martin*, 2002 UT 34 at ¶ 42, 44 P.3d 805. Moreover, the proffer did not indicate that the witnesses would testify that the victim had threatened to fabricate an allegation of sexual misconduct, nor did counsel argue at trial that the same was not barred by rule 412. *See* Utah R. Evid. 412 advisory committee's note ("Evidence offered to prove allegedly false prior claims by the victim is not barred by [r]ule 412.").

¶ 18 We accordingly conclude the trial court did not err in excluding the proffered testimony. To the extent Defendant claims on appeal that the trial court improperly excluded the testimony proffered at trial, his claim fails.

¶ 19 In his motions for a new trial, Defendant argued the excluded testimony regarding the October 2000 incident was not barred by rule 412 and was admissible under rule 404(b). In the motions, the testimony trial counsel claimed the witnesses would offer omitted any direct reference to prostitution. Counsel claimed a witness, Carlos Lopez–Perez (Lopez–Perez), would testify that in October of 2000 he asked the victim "to party." The victim "indicated . . . she would meet [Lopez–Perez] at [a] motel [af-ter] her boyfriend . . . left for work." At the motel, she did cocaine with Lopez–Perez and other individuals. Lopez–Perez left. Sometime later, the victim sought more drugs from Lopez–Perez at his residence. When Lopez–Perez "refused to give [the victim] additional cocaine . . . she . . . claim[ed] the men in the [motel] room took advantage of her in a sexual manner and she was considering calling the police." Counsel further claimed Lopez–Perez would testify that after he gave the victim cocaine, she dropped the issue. Counsel also claimed a second witness, Dawit Baxter (Baxter), would testify that there was no physical contact between himself and the victim or any of the other individuals in the room and the victim. In his renewed motion for a new trial, counsel claimed Lopez–Perez would testify the victim "fabricated claims of sexual misconduct" against Baxter and "other individuals."

¶ 20 Under rule 24 of the Utah Rules of Criminal Procedure, the trial court "may . . . grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R.Crim. P. 24(a). The trial court denied Defendant's motions for a new trial, ruling that as "proffered," the testimony was barred by rule 412 and inadmissable under rule 404(b). The court also denied Defendant's motions because there would not have been a different outcome in light of the evidence presented at trial.

¶ 21 Assuming the witnesses would have testified as trial counsel claimed in his motions for a new trial,[3] and assuming the

**2.** Trial counsel proffered that Carlos Lopez–Perez (Lopez–Perez) would testify that on several occasions, the victim had sex with him for drugs and she would demand drugs, become upset, yell, and threaten him. Counsel further proffered that Lopez–Perez would testify that in October of 2000, the victim "agreed to . . . exchange sex for drugs at [a] motel; that when the drugs ran out, she . . . got upset, began yelling and screaming and making threats and accusations to [him] about things that did happen in the motel room with regard to the individuals there." Trial counsel also proffered that Dawit Baxter would testify that "there was no physical contact between himself and [the victim] or any of the other individuals in the room." Trial counsel proffered that a third witness would testify that the victim had a reputation for being a prostitute.

**3.** Rule 24 of the Utah Rules of Criminal Procedure requires a motion for a new trial to "be accompanied by affidavits or evidence of the essential facts in support of the motion." Utah R.Crim. P. 24(b); *see also Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 135 (Utah Ct.App. 1997) (affirming trial court's denial of motion for new trial based on failure to file affidavit in accordance with rule 59 of the Utah Rules of Civil Procedure). In the present case, the motions are not accompanied by affidavits or evidence. Rather, the motions are accompanied by trial counsel's changing assertions as to what the witnesses would have testified. "Although [D]efendant claims that the witness[es] would have presented [this testimony in support of] his defense," Defendant had ample opportunity to offer more limited testimony at trial and the exclusion

trial court erred in ruling the testimony regarding the October 2000 incident was inadmissible,[4] we conclude any error did not have a "substantial adverse effect" on Defendant's rights. Utah R.Crim. P. 24(a); *see State v. Jaeger*, 1999 UT 1,¶ 30, 973 P.2d 404 ("[A]n erroneous decision to . . . exclude evidence does not constitute reversible error unless the error is harmful." (quotations and citations omitted)).

¶ 22 Defendant's convictions were supported by substantial physical evidence, consistent with the timing of the episode, including vaginal trauma consistent with forced penetration, multiple bruises, and injuries consistent with choking. Furthermore, police officers and other witnesses testified as to the victim's visible injuries and her distressed demeanor. Motel guests testified that they heard screaming. The victim also displayed an exaggerated startle response during the physical examination.

¶ 23 Moreover, Defendant testified as to his theory of the case—that the victim exchanged sex for drugs and fabricated the assaults when he would not buy her drugs.

He also offered witness testimony that the victim had a reputation for untruthfulness.

¶ 24 Because substantial record evidence supports Defendant's convictions, we are not convinced of a "likelihood of a more favorable outcome," *see Jaeger*, 1999 UT 1 at ¶ 38, 973 P.2d 404, had the testimony regarding the alleged threat been admitted, or that any error had a "substantial adverse effect" upon Defendant's rights. *See* Utah R.Crim. P. 24(a). We accordingly conclude the trial court did not abuse its discretion in denying Defendant's motions for a new trial.

## II. Ineffective Assistance of Counsel

¶ 25 Defendant argues his trial counsel was ineffective because counsel failed to argue at trial that the testimony in regard to the October 2000 incident was not barred by rule 412 and was admissible under rule 404(b).[5] To establish trial counsel was ineffective, Defendant must show: " '(1) that his counsel rendered a deficient performance in some demonstrable manner,' " and (2) that the deficient performance prejudiced his defense in that " 'the outcome of the trial would

---

of the testimony at trial "was not due to any error or impropriety" by the trial court. *State v. Gehring*, 694 P.2d 599, 601 (Utah 1984).

4. Defendant maintains the trial court erred because rule 412 of the Utah Rules of Evidence does not exclude false prior allegations of rape. *See* Utah R. Evid. 412 advisory committee's note ("Evidence offered to prove allegedly false prior claims by the victim is not barred by [r]ule 412."). However, trial counsel proffered no evidence of a prior false allegation of rape. Rather, the proposed testimony indicates a subsequent threat, which failed to materialize, to fabricate sexual misconduct.

Defendant also maintains the testimony regarding the threat is admissible as a bad act under rule 404(b) of the Utah Rules of Evidence. " '[I]n deciding whether evidence of other [bad acts] is admissible under rule 404(b), the trial court must determine (1) whether such evidence is being offered for a proper, noncharacter purpose under 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403.' " *State v. Vargas*, 2001 UT 5,¶ 33, 20 P.3d 271 (footnote omitted) (first alteration in original). The trial court concluded the testimony regarding the threat was inadmissible to show the victim's motive and intent in going to Defendant's room, to show a common scheme or plan to obtain drugs, and to attack her credibility.

The court did not reach whether the testimony was admissible under rule 403 of the Utah Rules of Evidence. Based on what counsel claimed Lopez–Perez would testify—that the victim subsequently threatened to fabricate sexual misconduct by third parties if Lopez–Perez did not give her drugs—we question the probative value of the evidence in light of the potential for confusing the jury. *See Boggs v. Collins*, 226 F.3d 728, 744 (6th Cir.2000) (noting rule 404 is "designed to prevent distracting mini-trials on collateral matters"), *cert. denied*, 532 U.S. 913, 121 S.Ct. 1245, 149 L.Ed.2d 152 (2001). However, because substantial record evidence supports Defendant's convictions, we do not reach whether the trial court's evidentiary rulings were erroneous.

5. Defendant additionally argues that his trial counsel was ineffective for failing to timely move the court to introduce evidence of prior sexual behavior under rule 412. However, Defendant does not allege "consensual 'rough' sex" as an alternative source of the victim's injuries. *State v. Boyd*, 2001 UT 30,¶ 43, 25 P.3d 985. Because substantial physical evidence supports Defendant's convictions, Defendant has failed to show prejudice—that the outcome of trial would probably have been different but for trial counsel's errors. *See State v. Hunt*, 781 P.2d 473, 477 (Utah Ct.App.1989). Thus, this argument also fails.

probably have been different but for counsel's error.' " *State v. Hunt,* 781 P.2d 473, 477 (Utah Ct.App.1989) (citations omitted); *see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

¶ 26 Because substantial record evidence supports Defendant's convictions, and any error in excluding the testimony was harmless, Defendant cannot establish prejudice. Thus, this claim fails.

### III. Sentence Enhancement

¶ 27 Finally, Defendant claims the trial court erred in failing to arrest judgment on the sentence enhancement because the evidence was insufficient for the jury to find beyond a reasonable doubt that Defendant had been previously convicted.

¶ 28 "We will 'overturn a conviction for insufficient evidence when it is apparent that there is not sufficient competent evidence ... for the fact-finder to find, beyond a reasonable doubt, that the defendant committed the crime.' " *State v. Boyd,* 2001 UT 30, ¶ 13, 25 P.3d 985 (citation omitted).

¶ 29 We conclude the evidence was sufficient. First, Defendant's name is not common. Further, this case does not rest entirely on the name of a person, *see State v. Bruno,* 69 Utah 444, 256 P. 109, 110–11 (1927); rather, the certified Illinois court documents indicate a birth date of October 25, 1954.[6] The jury could have drawn an inference as to Defendant's age from his appearance. In addition, Defendant testified in his own defense, and thus had the opportunity to assert that he was not the individual named in the certified Illinois conviction. *See State v. Aime,* 62 Utah 476, 220 P. 704, 708 (1923), *overruled in part on other grounds by State v. Larocco,* 794 P.2d 460 (Utah 1990); *see also State v. Johnson,* 350 S.C. 543, 567 S.E.2d 486, 488 (Ct.App.2002) (determining evidence sufficient to show defendant and individual from certified copies of court records were same person when defendant failed to offer evidence that suggested he was not same person (citing *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992))).

¶ 30 We conclude, under the facts of this case,[7] " 'the evidence, viewed in the light most favorable to the verdict, is [not] so inconclusive or so inherently improbable ... that reasonable minds must have entertained a reasonable doubt.' " *State v. Hoffhine,* 2001 UT 4, ¶ 20, 20 P.3d 265 (citation omitted). We therefore conclude the trial court did not err by denying Defendant's motion to arrest judgment.

### CONCLUSION

¶ 31 We conclude the trial court did not err by excluding the testimony proffered at trial. Further, because substantial evidence supports Defendant's assault convictions and he has failed to establish any error or impropriety that had a substantial adverse effect on his rights, the trial court did not abuse its discretion by denying his motions for a new trial. We also conclude sufficient evidence supported the enhancement. Therefore, we affirm.

¶ 32 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and PAMELA T. GREENWOOD, Judge.

---

6. During the hearing on Defendant's motion to arrest judgment, the prosecutor indicated Defendant's birth date was listed as October 25, 1954 on the information. However, the jury instructions repeat the charges, as provided in the information, but omit the birth date. The same birth date is listed on the affidavit of indigency signed by Defendant. It is not clear from the record that the jury considered the information or the affidavit in its deliberations on the enhancement.

7. This is not a case where an accused was "force[d] ... to take the stand in violation of his or her Fifth Amendment right not to take the stand to testify." *State v. Smith,* 726 P.2d 1232, 1236 (Utah 1986); *see also State v. Palmer,* 860 P.2d 339, 343 (Utah Ct.App.1993) (recognizing that when accused refuses to testify at trial, using that silence as direct inference of guilt is improper).